UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

JOE HAND PROMOTIONS, INC.,

                Plaintiff,

       - vs -

G & G 410 ENTERTAINMENT, LLC, *et al.,*

              Defendants.

CASE NO.: 3:23-cv-00374-KC

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**<u>MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF</u>**

1

# TABLE OF CONTENTS

A.    NATURE AND STAGE OF THE PROCEEDING............................................................ 5

B.    STATEMENT OF THE ISSUES...................................................................................... 6

C.    SUMMARY OF THE ARGUMENT ............................................................................... 6

D.    UNDISPUTED EVIDENCE ........................................................................................... 7

E.    STATEMENT OF RELEVANT FACTS ........................................................................ 8

F.    ARGUMENTS & AUTHORITIES ............................................................................... 10

   1.    THE FCA ............................................................................................................... 10

   2.    STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ........................ 12

   3.    DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)................... 15

G.  ATTORNEY'S FEES AND COSTS .............................................................................. 18

H.  CONCLUSION ............................................................................................................... 19

I.  PRAYER ......................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986) .................................................................................................................. 14

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) .......... 13

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ................................................................................................................................. 12, 17

*Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983) ................... 14

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ................................................................................................................................. 13, 17

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)............................. 12

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992).................................................................. 11

*J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D. Tex. April 17, 2009) (Sparks, J.) (Order) (Doc. No. 13) ......................................................... 17

*Joe Hand Promotions, Inc. v. Macias*, No. 4:11-cv-01773, 2012 WL 950157, at *2 (S.D. Tex. March 19, 2012)....................................................................................................................... 10

*Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Nathaniel, J.) ............................................................................................................ 16

*Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)...... 11

*J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017) ...........................................................................18

*Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012) ..........................................................................................................18

*Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, 2019 WL 3500854, at *5 (S.D. Tex. July 31, 2019) (Atlas, J.) .....................................................................................18

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001).. 16

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)............... 10

*KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at \*9 (W.D. Tex. March 30, 2001) (Briones, J.)...............................................................16

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981) ..........12, 17

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978) .........12

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) ...........................8

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)..................................................15

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986)............15

*Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)....11, 16

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) ................................................15

*U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) ..................................................................7

**Statutes**

28 U.S.C. § 1920 ...........................................................................................................................18

47 U.S.C. § 553 ......................................................................................................................6, 10, 11

47 U.S.C. § 605 ............................................................................................................6, 7, 10, 11, 18

47 U.S.C. § 605(e)(3)(B)(iii) ....................................................................................................6, 18

47 U.S.C. § 605(e)(3)(C)(i)(II)............................................................................................2, 6, 12, 19

47 U.S.C. § 605(e)(3)(C)(ii) ............................................................................................2, 6, 15, 17, 19

47 U.S.C. § 605(e)(4)....................................................................................................................7

Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ......................................................................13

Federal Communications Act of 1934 ....................................................2, 6, 8, 10, 11, 12, 17, 19

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

Plaintiff, Joe Hand Promotions, Inc., by and through its attorney, moves for a final default judgment against Defendants, G & G 410 Entertainment, LLC, d/b/a Mona and d/b/a Mona Bar of Modern Art, Enrique G. Garza Guerrero, Enrique J. Garza Almanza, and Javier Garza Guerrero and Supporting Brief ("Motion"), which is supported by the following brief and the attached exhibits.

**A.  NATURE AND STAGE OF THE PROCEEDING**

1.      On October 9, 2023, Plaintiff sued Defendants, G & G 410 Entertainment, LLC, d/b/a Mona and d/b/a Mona Bar of Modern Art (the "LLC"), Enrique G. Garza Guerrero ("E. Guerrero"), Enrique J. Garza Almanza ("Almanza"), and Javier Garza Guerrero ("J. Guerrero") complaining of the unauthorized and illegal interception and/or receipt and exhibition of the broadcast of the *Ultimate Fighting Championship® 254: Khabib Nurmagomedov vs. Justin Gaethje* mixed martial arts match, including all undercard bouts and commentary, telecast on October 24, 2020 (the "Program") at the establishment known as Mona/Mona Bar of Modern Art located at 410 ½ E. San Antonio, El Paso, Texas (the "Establishment"), a commercial business, without paying the commercial sublicense fee to Plaintiff.  *See* Doc. #1. The LLC, E. Guerrero, Almanza, and J. Guerrero shall be referred to collectively as "Defendants."

2.      On January 4, 2024, the Deputy Clerk entered default against LLC and Almanza. *See* Doc. #9.  On February 28, 2024, the Deputy Clerk entered default against E. Guerrero and J. Guerrero.  *See* Doc. #18.

3.     JHP hereby seeks the entry of a final default judgment against Defendants for statutory damages under the Federal Communications Act of 1934, as amended.[1]

## B.  STATEMENT OF THE ISSUES

- Whether Defendants violated Title 47 U.S.C. § 605 by exhibiting the Program at the Establishment without payment to or authorization from Plaintiff.

- Whether Defendants' unauthorized exhibition of the Program was willful and for the purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

- Whether $40,000.00 is the appropriate amount of statutory damages for Defendants' willful violation of the FCA.  47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii).

- Whether Plaintiff is entitled to an award of its attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

## C.  SUMMARY OF THE ARGUMENT

4.     Plaintiff pled piracy claims against Defendants under the Federal Communications Act of 1934, as amended (the "FCA").  The FCA protects against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553[2] and 605.[3]

---

[1] In its Complaint, Plaintiff asserted piracy claims under the FCA, 47 U.S.C. 605 *et seq.* or, alternatively, 47 U.S.C. § 553, *et seq.*  In this Motion, Plaintiff moves for final default judgment solely under Title 47 U.S.C. § 605.

[2] 47 U.S.C. § 553 provides:
> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

[3] 47 U.S.C. § 605 provides:
> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

5.    "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992)(reviewing the legislative history of § 605(e)(4)).

6.    By virtue of their default, Defendants admitted to committing piracy against Plaintiff.

7.    By this Motion, Plaintiff seeks the entry of a final default judgment against Defendants, jointly and severally, for $40,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

## D.  UNDISPUTED EVIDENCE

8.    In addition to the admitted-through-default allegations in Plaintiff's Complaint [*See* Docs. #1, #9, and #18], Plaintiff provides the following evidence in support of the requested default judgment:

Exhibit A:  Attached as **Exhibit A** are true and correct copies of

- The Certificate of Formation, the August 16, 2019 Certificate of Amendment, the August 21, 2019 Assumed Name Certificate for the name "Mona," and the Texas Franchise Tax Public Information Report for Report Year 2021 (taxpayer number redacted) for the LLC from the Texas Secretary of State,

- A certified copy of the Texas Limited Sales, Excise, and Use Tax Permit inquiry for the Establishment from the Texas Comptroller of Public Accounts showing the permit issued to the LLC, and

- The Business Records Affidavit, the public inquiry, and copies of the alcohol permits for the Establishment from the Texas Alcoholic Beverage Commission issued to the LLC.

<u>Exhibit B</u>: Attached as **Exhibit B** is the Declaration of Joseph P. Hand, III (*also known as* Joe Hand Jr.*), President of Plaintiff, Joe Hand Promotions, Inc., forming the basis for an award of statutory damages under the FCA.  Additionally, the Declaration includes the following exhibits:

      1.  A true and correct copy of the Commercial Licensing Agreement (redacted) for the Program, providing Plaintiff with the exclusive commercial license to distribute and authorize the public display of the Program to commercial establishments such as Defendants' Establishment, attached as **Exhibit B(1)**;

      2.  A true and correct copy of the Rate Card[4] for the Program, attached as **Exhibit B(2)**; and

      3.  A true and correct copy of the Affidavit of Hector Jimenez ("Plaintiff's Auditor"), an eye-witness, who entered the Establishment on the date of the Program and observed the Program being exhibited on multiple televisions along with photographs and a social media adveriement, attached as **Exhibit B(3)**.

<u>Exhibit C</u>: Attached as **Exhibit C** is the Affidavit for Attorney's Fees and Costs.  Additionally, the Affidavit includes the following exhibit:

      1.  True and correct copies of invoices from Professional Civil Process, attached as **Exhibit C(1)**.

## E.  STATEMENT OF RELEVANT FACTS

9.    Pursuant to Plaintiff's Complaint[5] and the evidence presented, the following facts are established as a matter of law by default:

      a.  The LLC conducted business as Mona, conducted business as Mona Bar of Modern Art, and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 4 and Exhibit A.

      b.  On the date of the Program, E. Guerrero, Almanza, and J. Guerrero were members, managers, officers, and/or principals of the entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 5-7, 18 and Exhibit A.

---

[4] For the Program, Plaintiff used the Rate Card from 2019.
[5] By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

c. Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3, 8-10 and Exhibit B at ¶ 4.

d. Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program for businesses such as the Establishment. *See Id.* and Exhibit B(1).

e. Through an agreement with the licensor of the Program, Plaintiff was licensed to authorize and distribute the public display of the Program at commercial locations such as bars, restaurants, nightclubs, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3, 8-10, Exhibit B at ¶ 4, and Exhibit B(1).

f. In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See Id.*

g. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff would either authorize the establishment's television provider to release the Program to the establishment, depending on the establishment's equipment and provider, or authorize the receipt of the Program via an internet stream by authorizing the internet platform to enable the content on a customer account provided by Plaintiff whereby Plaintiff would provide the establishment with a username and password to access the Program. *See* Plaintiff's Complaint, Doc. #1 at ¶ 9 and Exhibit B at ¶¶ 5-6, 8, 10-11.

h. Plaintiff did not notify the Establishment's television provider to unblock the Establishment's television account or take any steps that would enable the Establishment to legally obtain the Program via an internet stream. Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons. *See* Exhibit B at ¶¶ 9, 12.

i. Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a commercial sublicense fee to receive the Program. This commercial sublicense fee was based on the occupancy/capacity of an establishment. According to Plaintiff's Auditor, the Establishment had an approximate occupancy/capacity of 100 people. For an establishment with an occupancy/capacity of 100 people, the commercial sublicense fee for a legal broadcast would have been $1,095.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

j. On the date of the Program, Plaintiff's Auditor, an eye-witness, entered the Establishment and observed the Program being broadcast on multiple televisions. *See* Exhibit B at ¶ 9 and Exhibit B(3).

k. Joseph P. Hand, III (*also known as* Joe Hand Jr.), Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the El Paso, Texas area. Accordingly, Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Exhibit B at ¶¶ 10-13.

l. The broadcast of the Program at the Establishment was advertised on social media. *See* Exhibit B(3) at social media post.

## F. ARGUMENTS & AUTHORITIES

### 1. THE FCA

10.     The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the FCA.

11.     "The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773, 2012 WL 950157, at *2 (S.D. Tex. March 19, 2012) (referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)(the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

12.     On the date of the Program, the LLC conducted business as Mona/Mona Bar of Modern Art and owned, operated, maintained, and controlled the Establishment; on the date of the Program, E. Guerrero, Almanza, and J. Guerrero were members, managers, officers, and/or principals of the entity operating the Establishment with a right and ability to supervise and a direct

financial interest in the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license.  *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3-19, 21-22, 24-25, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), and Exhibit B(3).

13.    In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as employing residential cable and/or satellite equipment to circumvent commercial licensing requirements or engaging in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only. *See* Exhibit B at ¶¶ 10-13; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); and *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

14.    Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)(citations omitted).

15.    Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter.  In this Motion, Plaintiff submits evidence to support damages under the FCA, specifically seeking damages under 47 U.S.C. § 605.

**2.    STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)**

16.    As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).

17.    Pursuant to the FCA, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the FCA in connection with the Program.

18.    Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

19.    As stated above, and supported by the attached evidence, on the date of the Program, Defendants, themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendants' Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 3-19, 21-22, 24-25, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), and Exhibit B(3). The willfulness of Defendants'

violation is also shown by advertising the broadcast of the intercepted Program on social media. *See* Exhibit B(3) at social media advertisement.

20.    In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

21.    Applying the courts' analysis from their decisions under the Copyright Act, which has an analogous definition of statutory damage awards, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts.[6]  Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind," and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991).  For an establishment with a capacity of 100 people, the commercial sublicense fee would have been $1,095.00.  *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

22.    Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business

---

[6] *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.")(citations omitted).

opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants' Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

23.    Types of damages suffered by Plaintiff and factors related to same include the following:

  a. Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

  b. Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

  c. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, our company and the authorized commercial establishments suffer additional losses.

  d. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments, such as Defendants' Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Exhibit B at ¶¶ 5, 14-15.

24.    Each visitor of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983). Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to

control and receive payment for the transmission, because patrons viewing the pirated program at Defendants' Establishment would likely have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's business opportunities.  *See* Exhibit B at ¶¶ 5, 13-16; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

25.    The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Exhibit B at ¶¶ 5, 13-16.

26.    Given the benefits which Defendants received from the broadcast of the Program (the revenue from sales during the Program and establishing goodwill by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3.    DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

27.    Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendants' actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

28.    Defendants specifically and willfully acted to illegally intercept the transmission of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program.[7]  *See* Exhibit B at ¶¶ 10-13.

29.    Defendants knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.*")(emphasis added).  *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.)("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.")(emphasis added).

---

[7] *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Nathaniel, J.)("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.")(emphasis added).

30.    Defendants' purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff as shown in the following evidence: [8]

    a.    **Multiple televisions:**  Patrons who entered the commercial Establishment viewed the pirated Program on multiple televisions. *See* Exhibit B at ¶ 9 and Exhibit B(3).

    b.    **Advertisements**:    The broadcast of the Program at the Establishment was advertised on social media to draw patrons to the Establishment.  *See* Exhibit B(3) at social media post.

    c.    **Sales:**  The Establishment is a business that sold alcoholic drinks on the date and during the broadcast of the Program.  *See* Exhibit A and Exhibit B(3) (Plaintiff's Auditor ordered a Dos Equis XX beer from the bartender during the broadcast of the Program).

31.    Given the above, Defendants' actions were clearly willful and for a commercial advantage warranting additional damages under the FCA.[9]

32.    Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendants for willful acts.[10]  Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Thirty Thousand Dollars ($30,000.00)(or three times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff.

---

[8] *See J&J Sports Productions, Inc. v. Papagallos 1, Inc.*, Civil Action No. A-08-CA-691-SS (W.D. Tex. April 17, 2009) (Sparks, J.) (Order) (Doc. No. 13)("The undisputed evidence establishes the [Program] was broadcast to paying customers of Defendants' commercial establishment and thus the violation was for commercial advantage or private gain.").

[9] *See Id.*

[10] *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc.*, 219 F. Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations).

### G.  ATTORNEY'S FEES AND COSTS

33.    Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii).   Under Section 605(e)(3)(B)(iii), the award of attorneys' fees is mandatory. According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

34.    By the language of the statute, Plaintiff's costs should not be limited to taxable costs under 28 U.S.C. § 1920.  47 U.S.C. § 605 allows for the recovery of "full costs." "[Plaintiff's] costs associated with retaining a private process server are not taxable under § 1920... Nevertheless, because [Plaintiff] is entitled to recover its 'full costs,' not merely its taxable costs under § 1920, the Court will award [Plaintiff] $675.00 in connection with service of process.  *Cf. Kingvision Pay-Per-View*, 426 F.Supp. 2d at 67 (concluding 'full costs' under § 605 includes investigative costs); *Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012)(awarding 'investigative costs,' 'postage charges,' and 'courier charges' under § 605), *report and recommendation adopted*, 2012 WL 4762452 (D.S.C. Oct. 5, 2012); *J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017)(awarding investigative fees)." *See Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, 2019 WL 3500854, at *5 (S.D. Tex. July 31, 2019) (Atlas, J.).

35.    Plaintiff seeks an attorney's fees award for the prosecution of this action through the final default judgment requested. *See* Exhibit C.  In addition, Plaintiff seeks an award of costs, $1,462.00, which costs have been proven by affidavit with the attached invoices.  *See* Exhibit C at ¶ 7 and Exhibit C(1).

18

## H. CONCLUSION

36.    In conclusion, the averments that Defendants, willfully and for purposes of commercial advantage and private financial gain, illegally intercepted and/or received the pay-per-view broadcast of the Program, and that Defendants exhibited the Program in Defendants' commercial Establishment without authorization and without paying the sublicensing fee to Plaintiff are deemed admitted and supported by evidence. Accordingly, pursuant to the FCA and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## I. PRAYER

Plaintiff respectfully requests that the Court sign and cause to be entered a final default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, G & G 410 ENTERTAINMENT, LLC, d/b/a MONA and d/b/a MONA BAR OF MODERN ART, ENRIQUE G. GARZA GUERRERO, ENRIQUE J. GARZA ALMANZA, and JAVIER GARZA GUERRERO awarding Plaintiff;

(1)    Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2)    Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $30,000.00; and

(3)    Attorney's fees from Defendants, jointly and severally, in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs (for prosecution of this case through the final default judgment); and

(4)    Costs from Defendants, jointly and severally, in the amount of $1,462.00; and

(5)     Post-judgment interest at the highest lawful rate; and

(6)     Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 25th day of April, 2024, a true and correct

copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

G & G 410 Entertainment, LLC          Enrique G. Garza Guerrero
c/o Mario Alfaro                      412 E. San Antonio
221 N. Kansas, Suite 700              El Paso, Texas 79901
El Paso, Texas 79901

Enrique J. Garza Almanza             Javier Garza Guerrero
1900 Gus Moran St.                   412 E. San Antonio
El Paso, Texas 79936                 El Paso, Texas 79901

*/s/ Jamie King*                          4/25/2024
Jamie King                                Date

20